Jeffrey Gilbert
**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477


Philip R. Sellinger
Ian S. Marx
**GREENBERG TRAURIG, LLP**
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey  07932-0677
(973) 360-7900 (Phone)
(973) 301-8410 (Facsimile)

Attorneys for Plaintiffs Cellco Partnership d/b/a
Verizon Wireless and Anne M. Siotka

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, and ANNE M. SIOTKA, <br><br> Plaintiffs, <br><br> v. <br><br> PLAZA RESORTS INC. d/b/a CARIBBEAN CRUISE LINE; PLATINUM MARKETING GROUP LLC; | Civil Action No. : <br><br> *Document Electronically Filed* <br><br><br> **VERIFIED COMPLAINT** |

| |
|---|
| DIABETESHELPNOW.COM, LLC; PLAZA PHARMACY, LLC; PLAZA HEALTH CARE SOLUTIONS; UNITED PUBLIC OPINION GROUP d/b/a SURVEYCRUISE.COM; RAPID MEDICAL RESPONSE, LLC d/b/a RAPID MEDICAL ALERT; JOHN DOE No. 1 (a/k/a owner, user or "spoofer" of telephone numbers 360-460-5964, 206-200-7040 and 206-402-7948 ); JOHN DOE No. 2 (a/k/a owner, user or "spoofer" of telephone numbers 561-972-5440); and JOHN DOES 3-50, <br><br> Defendants. |

Plaintiffs Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") and Anne M. Siotka bring this Verified Complaint against defendants PLAZA RESORTS INC. d/b/a CARIBBEAN CRUISE LINE; PLATINUM MARKETING GROUP LLC; DIABETESHELPNOW.COM, LLC; PLAZA PHARMACY, LLC; PLAZA HEALTH CARE SOLUTIONS; UNITED PUBLIC OPINION GROUP d/b/a SURVEYCRUISE.COM; RAPID MEDICAL RESPONSE, LLC d/b/a RAPID MEDICAL ALERT; JOHN DOE No. 1 (a/k/a owner, user or "spoofer" of telephone numbers 360-460-5964, 206-200-7040 and 206-402-7048); JOHN DOE No. 2 (a/k/a owner, user or "spoofer" of telephone numbers 561-972-5440); and JOHN DOES 3-50. Verizon Wireless and Anne Siotka (collectively, "Plaintiffs") allege as follows:

## SUMMARY AND NATURE OF THE ACTION

1. Plaintiffs seek to stop a massive illegal telemarketing campaign by Defendants. Since at least July 2012, Defendants, have been responsible for the making of **millions** of unsolicited telemarketing calls to cellular phones. These calls, made with an autodialing

mechanism and a prerecorded message (the "Telemarketing Calls"), violate the federal Telephone Consumer Protection Act ("TCPA").

2. The Telemarketing calls start with the playing of a "fog horn" sound (presumably meant to mimic a cruise ship) followed by a prerecorded voice message attempting to persuade the call recipient to provide personal information under the guise of taking a "survey" with the promise of receiving a free cruise. If a call recipient provides the requested personal information, she will then receive targeted calls from telephone sales agents, attempting to sell products that would be of interest to the call recipient based on the "survey" answers (for example, a diabetes pump would be offered to someone who responded to the survey as being a diabetic).

3. Plaintiffs bring this action to obtain an injunction prohibiting Defendants' illegal conduct and to recover statutory and common law damages arising from such conduct.

## THE PARTIES

4. Verizon Wireless is a Delaware general partnership with its principal place of business at One Verizon Way, Basking Ridge, New Jersey. Verizon Wireless is a leading provider of wireless communications with more than 100 million customers throughout Florida and the United States. Many of Verizon Wireless' employees receive wireless telephone service through "concession accounts," which are (as explained in greater detail below) wireless phone lines that are owned and paid for by Verizon Wireless and that Verizon Wireless either uses itself or makes available to certain of its employees for the purpose of conducting Verizon Wireless business.

5. Anne M. Siotka is a citizen of the State of New Jersey and an employee of Verizon Wireless.

6. Defendant Plaza Resorts Inc. ("Plaza Resorts") is a Florida corporation whose principal place of business is 2419 East Commercial Blvd, Suite 100, Fort Lauderdale, Florida. Upon information and belief, Plaza Resorts operates under the name Caribbean Cruise Lines.

7. Defendant Platinum Marketing Group, LLC ("Platinum") is a Florida limited liability corporation, whose principal place of business is 5800 North Federal Highway, Boca Raton, Florida. Platinum is licensed as a company engaged in sales over the telephone.

8. Defendant diabeteshelpnow.com, LLC ("diabeteshelpnow.com") is a Florida limited liability corporation whose principle place of business is 902 Clint Moore Road, Ste. 100, Boca Raton, Florida. Upon information and belief, Platinum manages and operates www.diabeteshelpnow.com.

9. Defendant Plaza Pharmacy, LLC ("Plaza Pharmacy") is a Florida limited liability corporation with its principal place of business at 4399 NW 124th Avenue, Coral Springs, Florida. Upon information and belief, Plaza Pharmacy was previously known as Plaza Healthcare Solutions ("Plaza Healthcare") and its representatives still hold themselves out as Plaza Healthcare, which is why Plaza Healthcare is named a defendant in this Complaint. Upon information and belief, www.diabeteshelpnow.com places calls and seeks leads on behalf of Plaza Pharmacy and Plaza Healthcare.

10. Platinum, diabeteshelpnow.com, Plaza Pharmacy and Plaza Healthcare together are collectively referred to as the "Diabetes Now Defendants."

11. The Diabetes Now Defendants are engaged in a collaborative marketing structure in a joint effort to sell reduced price diabetic supplies.

12. Defendant United Public Opinion Group ("United Public") is, upon information and belief, a fictitious name under which John Doe No. 1 operates. Upon information and belief,

United Public provides Interactive Voice Response survey software and operates the website www.surveycruise.com.

13. On information and belief, the Internet website www.surveycruise.com is hosted by godaddy.com. The subscriber or registrant of www.surveycruise.com is surveycruise.com, having a mailing address of 14747 N. Northsight Blvd., Suite 111, PMB 309, Scottsdale, Arizona and a phone number of 480-624-2599. Upon information and belief, the above address is a mail drop associated with a UPS store.

14. Defendant Rapid Medical Response LLC ("Rapid") is a Utah limited liability corporation with a principal place of business at 730 South Sleepyridge Drive, Orem, Utah. Upon information and belief, Rapid does business as Rapid Medical Alert through an Internet website with an address of www.rapidmedicalresponse.com and sells medical devices.

15. Plaintiffs do not know the true names of the defendants sued herein as JOHN DOES 1 through 50 and therefore sues such defendants by such fictitious names. Plaintiffs will amend this Complaint to set forth the true names of such defendants when the same are learned.

### JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiffs' claims under the Telemarketing and Consumer Fraud and Abuse Prevention Act pursuant to 28 U.S.C. §1331 and 15 U.S.C. §6104(a).

17. Venue is proper in this district in accordance with 28 U.S.C. §1391 because Caribbean Cruise Lines and the Diabetes Now Defendants reside in this district and harmful conduct occurred in this district.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

18. Defendant United Public through www.surveycruise.com appears to operate as a "lead generator" that markets allegedly "free" cruises and other "rewards" for survey

5

participation. United Public then provides the information gleaned through the "survey" responses to its collaborators, who use the information to market products over the phone to the survey respondents.

19. Beginning at least as early as July 2012, United Public, or those operating on its behalf, have placed millions of robocalls to cellular phones, including to plaintiffs' cellular phones, consisting of a "fog horn" sound followed by a prerecorded voice message inquiring if the call recipient was interested in a free cruise and urging the recipient to press "1" to take a survey. When a recipient presses "1," he or she is connected to an automated survey that requires responses over the phone. This survey includes questions such as whether the recipient has diabetes, sleep apnea or a septic tank. The recipient is not told what is going to be done with this information and at no point is asked to consent to the sharing of this information with any other entity.

20. Once the call recipient completes the survey, he or she is connected to a live operator who directs the call recipient to www.surveycruise.com for information on how to obtain his or her free cruise.

21. On its homepage, www.surveycruise.com indicates that it is operated by Untied Public and posts a solicitation for United Public seeking qualified individuals to survey.

22. Upon information and belief, United Public and www.surveycruise.com are affiliated and act in concert with Defendant Plaza Resorts Inc. and Caribbean Cruise Line. United Public provides the information obtained from its robocall survey to Plaza which then "fulfills" the orders by offering the purportedly "free" two day cruises to the persons who have completed the survey. However, the cruises are not free. In order to receive the purportedly "free" cruise, the recipient of the calls must agree to pay all taxes, fees and gratuities associated

with the "free" cruise and must agree on the phone call to accept this condition or forfeit the cruise offer.

23. United Public and its affiliates then provide the information obtained from the survey, without the survey recipients' consent, to other marketing companies. They use this information to place robocalls to those who have completed the survey.

24. For example, upon information and belief, United Public provides the information about those recipients who have indicated that they have diabetes to the Diabetes Now Defendants, which then places calls to those recipients offering to provide them with "free" diabetes monitoring services.

25. Examples of some of the illegal Telemarketing Calls received by Plaintiffs are summarized below.

**1. The Anne Siotka Calls**

26. On October 16, 2012 at 11:14 a.m., plaintiff Anne Siotka received a call on her cellular telephone from a phone number that appeared on Ms. Siotka's caller ID to be 206-200-7040. However, based on Verizon Wireless's investigation, the call did not actually originate from that number. Rather, United Public appears to have used a technique known as "spoofing," which is the practice of causing a telephone network to display a number on the recipient's Caller ID display that is not that of the actual originating station.

27. Ms. Siotka answered the call and received an automated message requesting that she take a survey to win a free cruise.

28. Ms. Siotka took the survey and was then connected to an operator who identified himself as Operator 465, who asked Ms. Siotka for her name and zip code.

29. Ms. Siotka eventually was transferred to a recording instructing her to visit www.surveycruise.com and to log in to that website using her phone number and zip code to receive her all expenses paid cruise. After Ms. Siotka received an advertisement for a medical alert system, the call was disconnected.

30. When Ms. Siotka later visited the surveycruise.com web page and input the requested information to obtain her free cruise, the website claimed not to recognize her phone number and she never received any information on the promised "free" cruise.

### 2. Other Telemarketing Calls

31. On or about October 12, 2012, an employee of Verizon Wireless's parent entity received a Telemarketing Call on his wireless telephone that appeared to originate from 360-460-5964. Based upon Verizon Wireless's investigation, it appears that this call was also "spoofed." Like Ms. Siotka, he answered the call and received an automated message requesting that he take a survey to win a free cruise.

32. On or about October 18, 2012, the same individual received a Telemarketing Call on his wireless telephone that appeared to originate from 206-200-7040 (the same number that appeared to be used to call Ms. Siotka). After pressing "1," he answered the survey, provided a name and indicated, among other things, that he had diabetes.

33. On October 23, 2012, the same individual received a call based on the information he had provided in the "survey." The caller indicated she was interested in providing him with an upgraded diabetes meter and needed to see if he qualified for it to be covered by his insurance. The woman said she was calling from Diabetes Help Now on behalf of Plaza Health Care Solutions. When asked for a call back number, she said Diabetes Help Now could be reached at (866) 226-5604 or the website www.diabeteshelpnow.com.

34. On October 29, 2012, the same individual received a call, again in response to information provided in the "survey." The caller identified himself as Chad of Caribbean Cruise Lines located in Fort Lauderdale, Florida.

35. Chad indicated he was calling to offer the free two night cruise for having done the survey. Although the cruise was "free," Chad explained the traveler had to agree to be responsible for all port charges, taxes, gratuities and similar fees. When the recipient of the call hesitated about signing up, Chad hung up.

36. Later on October 29, 2012, the same individual received another call in response to information provided in the "survey." The caller indicated the call was being made for on behalf of Rapid Medical Alert to arrange for the recipient to get a free medical monitoring device. The caller indicated that Rapid Medical Alert had a research department that gets their leads, provided a company website, www.rapidmedicalresponse.com, and said she was calling out of Utah.

**3. The Concession Accounts**

37. A significant number of the Telemarketing Calls were made to Verizon Wireless employees on their Concession Accounts.

38. Concession Accounts are cellular service accounts that are owned and paid for by Verizon Wireless and that Verizon Wireless either uses itself or makes available to certain of its employees for the purpose of conducting Verizon Wireless business.

39. Verizon Wireless uses some of its Concession Accounts for, among other things, sales, demonstration and testing purposes, such as for customer service training, testing of the Verizon Wireless network, display in Verizon Wireless stores, to promote efficiency and productivity, and to loan to potential business customers.

40. While limited personal use is permitted, Concession Accounts are issued to certain employees because they have a business related need for the mobile device and such devices are therefore intended to be used primarily for Verizon Wireless's business purposes. Employees issued Concession Accounts are advised in writing that the accounts cannot be used as a primary personal device to replace a home landline phone or to support any business venture other than Verizon Wireless. Employees are further advised that Verizon Wireless's Area Compliance Teams monitor Concession Account activity and will question any unusual or excessive usage that could indicate noncompliance with company policy.

41. Verizon Wireless employees do not pay for Concession Account equipment and services; rather, they are expressly advised that such equipment and services are only being loaned to them and remain the property of Verizon Wireless. When use of the Concession Account equipment and services is no longer warranted (e.g., when an employee leaves or, as often happens, is reassigned to another job), the equipment is returned to Verizon Wireless and the service is terminated.

42. Thus, employees have no expectation of privacy or ownership with respect to the Concession Accounts. Indeed, except for their added advantages of convenience and mobility, Concession Account cell phones are no different from the desk phones that Verizon Wireless installs in employee offices. For both types of phones, some limited personal use is permitted, but they are primarily to be used for business purposes. The availability of call forwarding and related features permits employees to receive business calls on both cell phones and desk phones in the evenings and on weekends as well as during business hours.

43. Given the Concession Accounts' business purpose, an unsolicited telemarketing call to an employee's company-issued Concession Account phone harms Verizon Wireless

because it diverts the employee's attention away from work duties, thus decreasing the employee's productivity.

### 4. Summary of Offending Telemarketing Calls

44. The Verizon Wireless customers and employees who have received the Telemarketing Calls at issue in this Complaint reported at least three phone numbers that appear on the caller ID when they received these calls (although, as previously indicated, it appears that these numbers have been "spoofed"). These numbers include: 360-460-5964, 206-200-7040 and 206-402-7948.

45. Upon information and belief, these caller IDs were being used by United Public to make telemarketing calls. Upon information and belief, United Public also used other caller IDs/phone numbers (commonly referred to as "ANIs") in their telemarketing campaigns which may have directed calls to Verizon Concession Accounts.

46. Defendants have made over **5.7 million** calls to Verizon Wireless customers and employees using the caller IDs listed above. Specifically:

    a. Verizon Wireless data indicate that 1,714,885 calls were placed to Verizon Wireless's customers and/or Concession Accounts with a caller ID appearing to be 360-460-5964 from October 11, 2012 to October 14, 2012, of which approximately 8,427 were to Verizon Wireless concession accounts.

    b. Verizon Wireless data indicate that 848,884 calls were placed to Verizon Wireless's customers and/or Concession Accounts with a caller ID appearing to be 206-200-7040 on October 16, 2012, of which approximately 4,354 were to Verizon Wireless Concession Accounts.

    c. Verizon Wireless data indicate that 3,221,476 calls were placed to Verizon Wireless's customers and/or Concession Accounts with a called ID appearing to be 206-402-7948 from October 30, 2012 to November 3, 2012, of which approximately 14,897 were to Verizon Wireless Concession Accounts.

47. In total, since October 11, 2012 alone, Defendants and/or those acting on their behalf have made at least 5,785,245 calls to Verizon Wireless customers and/or concession accounts, of which approximately 27,678 were made to Verizon Wireless concession accounts. Such calls were made by, through or on behalf of Defendants.

48. Upon information and belief, the volume of calls placed from a single telephone number during very short time spans demonstrates that they were made by using automatic telephone dialing system equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator. For instance, approximately 104,438 calls with a caller ID appearing to be 360-460-5964 were made between 9:00 a.m. and 10:00 a.m. on October 11, 2012, or, on average, approximately 1,740 calls per minute.

49. Approximately 96,049 calls with a caller ID appearing to be 206-200-7040 were made between 10:00 a.m. and 11:00 a.m. on October 16, 2012, or, on average, approximately 1,601 calls per minute.

50. Approximately 172,104 calls with a caller ID appearing to be 206-402-7948 were made between 2:00 p.m. and 3:00 p.m. on October 31, 2012, or on average approximately 2,868 calls per minute.

51. These Telemarketing Calls damage Verizon Wireless' relationships with its customers and impose customer service costs on Verizon Wireless. Verizon Wireless customers who have received Telemarketing Calls in the past have blamed Verizon Wireless for the

annoyance and intrusion they have suffered as a result of receiving these calls. These customers will often call Verizon Wireless Customer Service to complain about the calls and to request credits for the airtime used by these calls, thus causing Verizon Wireless to incur significant additional costs as a result of these calls.

**COUNT ONE (Verizon Wireless)**
**(Violation of 47 U.S.C. § 277)**

52. Plaintiffs repeat and reallege the prior allegations of the Complaint as if set forth completely herein.

53. The TCPA, 47 U.S.C. § 277, *et seq.*, was enacted to, among other things, protect the privacy interests of wireless telephone users from the use of automated dialing equipment or prerecorded voices to make unsolicited telemarketing calls to cellular telephones. The TCPA provides, in relevant part, that "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone." 47 U.S.C. § 227(b)(1) (emphasis added).

54. "The term 'automatic telephone dialing system' means equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1).

55. Defendants have violated the TCPA, in that they have, within the United States, made calls to telephone numbers assigned to cellular devices, not for emergency purposes and not made with the prior express consent of the called party, using (1) an automatic telephone dialing system, and/or (2) an artificial or a prerecorded voice and/or they have caused such calls

to be made on their behalf, in which case the Defendants have obtained or have sought to obtain a financial benefit from such calls.

56. Defendants have knowingly acted in concert and conspired to place the Telemarketing Calls in violation of the TCPA or, alternatively, have each aided, abetted, assisted, and/or encouraged the making of such calls. Accordingly, each Defendant is jointly and severally liable for the damages sought herein.

57. The TCPA specifically provides that an aggrieved party may institute a private right of action. It states, in relevant part, that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, . . . [and/or] to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3). Additionally an award of statutory or actual damages may be trebled by the court where a defendant willfully or knowingly violates the TCPA.

58. Verizon Wireless is entitled to statutory damages of $500 for each Telemarketing Call made by or on behalf of Defendants to a Verizon Wireless concession account and actual damages it has suffered as a result of Telemarketing Calls made to Verizon Wireless customers, such amounts to be trebled as result of Defendants' knowing and willful violation of the TCPA.

59. At least 27,678 telephone calls from the telephone numbers at issue in this action were placed to Verizon Wireless Concession Accounts during the time period between October 11, 2012 and November 3, 2012. Pursuant to, among other things, the TCPA, 47 U.S.C. § 227, *et seq.*, Verizon Wireless is entitled to statutory damages of at least $13,839,000.

## COUNT TWO (Siotka)
### (Violation of 47 U.S.C. § 277)

60. Plaintiffs repeat and reallege the prior allegations of the Complaint as if set forth completely herein.

61. Verizon Wireless believes that it has standing to pursue a TCPA claim based upon the Telemarketing Call made to Plaintiff Siotka's and other Verizon Wireless employees' cellular phones given that such calls were made to Verizon Wireless Concession Accounts. However, to the extent this Court disagrees, and finds that Verizon Wireless lacks standing to assert such claims, then Ms. Siotka has standing to assert the claim as to the call made to her under the TCPA.

62. If Verizon Wireless is determined to lack standing to pursue such claims, Siotka is entitled to bring this action to enjoin Telemarketing Calls and to obtain statutory damages of $500 for the Telemarketing Call made to her cellular phone by or on behalf of Defendants.

**WHEREFORE**, Plaintiffs demand the entry of a judgment as follows:

a. That Defendants and any of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from further making calls to wireless telephone numbers in violation of the TCPA;

b. That Plaintiffs be awarded statutory damages against each Defendant, jointly and severally, in the amount of $500 for each violation of the TCPA as pleaded herein by the making of a Telemarketing Call to a Verizon Wireless Concession Account and, in the alternative, to Siotka's cellular phone, along with treble damages for Defendants' knowing and willful violation of the TCPA;

c. That compensatory, consequential and punitive damages be awarded in favor of Plaintiffs and against Defendants, jointly and severally, together with interest thereon; and

d. That Plaintiffs be granted such other relief as this Court deems just and proper.

GREENBERG TRAURIG, LLP

By: /s/ Jeffrey Gilbert

Attorneys for Plaintiffs
*Cellco Partnership d/b/a Verizon Wireless and Anne M. Siotka*

Dated: November 8, 2012

## VERIFICATION

Antonio G. Salinas, of full age and under penalty of perjury, declares and states as follows:

I am an Associate Director of Corporate Security within the Corporate Security & BCDR Legal & External Affairs Department of Cellco Partnership d/b/a Verizon Wireless, a plaintiff herein. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to my own personal knowledge, investigation of the Telemarketing Calls as described therein, discussion with Verizon Wireless's personnel and review of business records, except as to the matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:
11/8/2012

_____
ANTONIO G. SALINAS

## VERIFICATION

Anne M. Siotka, of full age and under penalty of perjury, declares and states as follows:

I am a plaintiff herein and an Assistant General Counsel - Sales and Distribution of Cellco Partnership d/b/a Verizon Wireless. I have read the foregoing Verified Complaint and know the contents thereof, and Paragraphs 5, 15, 26, 27, 28, 29 and 30 are true to my own personal knowledge.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 11/8/2012

*[signature]*
ANNE M. SIOTKA