UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81238-CIV-MARRA

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS, and ANNE M. SIOTKA,

Plaintiffs,

vs.

PLAZA RESORTS INC. d/b/a CARRIBEAN
CRUISE LINE, et al.,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Plaza Resorts, Inc.'s Motion to Dismiss

Plaintiffs' Verified Complaint (DE 35); Defendant Platinum Marketing Group and

Diabeteshelpnow.com's Motion to Dismiss (DE 38); Defendant Plaza Pharmacy, LLC and Plaza

Health Care Solutions Unopposed Motion for Leave to Join in the Motions to Dismiss of Other

Defendants and Adoption of the Arguments Set Forth Therein (DE 42).  The Court has carefully

considered the Motions and is otherwise fully advised in the premises.

I. Background

Plaintiffs Cellco Partnership d/b/a Verizon Wireless ("Verizon") and Anne M. Siotka

("Siotka")  (collectively, "Plaintiffs") filed this two-count Complaint against Defendants for

violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (Compl, DE

1.)  Defendants include: Plaza Resorts Inc. ("Plaza Resorts"), Platinum Marketing Group, LLC

("Platinum"), Diabeteshelpnow.com, LLC[1] ("Diabetes"), Plaza Pharmacy ("Plaza Pharmacy"), United Public Opinion Group ("United Public"), Rapid Medical Response, LLC ("Rapid")[2] and John Does 1 through 50.  (Compl. ¶¶ 6-9, 12, 14.)  The allegations of the Complaint are as follows:

Verizon is a cellular service provider that offers many of its employees wireless telephone service through "concession accounts" which are wireless telephone lines that are owned and paid for by Verizon and that Verizon uses itself or makes available to certain of its employees for the purpose of conducting Verizon wireless business. (Compl. ¶¶ 4, 38.)  Verizon uses some of its concession accounts for, among other things, sales, demonstration and testing purposes, such as for customer service training, testing of the Verizon network, displaying in Verizon stores, promoting efficiency and productivity, and as loans to potential business customers.  (Compl. ¶ 39.)  The cell phones associated with the concession accounts are the equivalent of Verizon employees' office desk telephones. (Compl. ¶ 42.)  These telephones remain Verizon's property with Verizon paying for the account. (Compl. ¶¶ 38, 40.)

Beginning at least as early as July 2012, Defendant United Public, or those operating on its behalf, have placed millions of robocalls to cellular phones, including to Plaintiffs' cellular phones, consisting of a "fog horn" sound followed by a prerecorded voice message inquiring if the call recipient was interested in a free cruise and urging the recipient to press "1" to take a

---

[1] "Upon information and belief," Platinum manages and operates Diabeteshelpnow.com. Throughout the Complaint, Platinum, Diabetes, Plaza Pharmacy and Plaza Healthcare are collectively referred to as "Diabetesnow Defendants." (Compl. ¶¶ 8, 10.)

[2] On May 24, 2013, the Court entered a Consent Order granting Plaintiffs permanent injunctive relief against Rapid. (DE 61.)

2

survey. When a recipient presses "1," he or she is connected to an automated survey that requires responses over the telephone. This survey includes questions such as whether the recipient has diabetes, sleep apnea or a septic tank. The recipient is not told what is going to be done with this information and at no point is asked to consent to the sharing of this information with any other entity. (Compl. ¶ 19.)  Once the call recipient completes the survey, he or she is connected to a live operator who directs the call recipient to www.surveycruise.com for information on how to obtain his or her free cruise. (Compl. ¶ 20.)

Ms. Sioka is an employee of Verizon. (Compl. ¶ 5.)  On October 16, 2012 at 11:14 a.m., Ms. Siotka received a call on her cellular telephone from a telephone number that appeared on her  caller ID to be 206-200-7040. However, based on Verizon's investigation, the call did not actually originate from that number. Rather, United Public appears to have used a technique known as "spoofing," which is the practice of causing a telephone network to display a number on the recipient's Caller ID display that is not that of the actual originating station. (Compl. ¶ 26.) Ms. Siotka answered the call and received an automated message requesting that she take a survey to win a free cruise.  Ms. Siotka took the survey and was then connected to an operator who identified himself as Operator 465, who asked Ms. Siotka for her name and zip code. (Compl. ¶¶ 27-28.)  Ms. Siotka eventually was transferred to a recording instructing her to visit www.surveycruise.com and to log in to that website using her telephone number and zip code to receive her all expenses paid cruise. After Ms. Siotka received an advertisement for a medical alert system, the call was disconnected. (Compl. ¶ 29.)

Defendant United Public through www.surveycruise.com appears to operate as a "lead generator" that markets allegedly "free" cruises and other "rewards" for survey

3

participation. United Public then provides the information gleaned through the "survey" responses to its collaborators, who use the information to market products over the telephone to the survey respondents. (Compl. ¶ 18.)  Beginning at least as early as July 2012, United Public, or those operating on its behalf, placed millions of calls to cellular telephones, including to Plaintiffs' cellular telephones, using an automated dialing mechanism and a prerecorded message. (Compl. ¶ 19.)  United Public and www.surveycruise.com are affiliated and act in concert with Defendant Plaza Resorts Inc. and Caribbean Cruise Line. (Compl. ¶ 22.)  United Public and its affiliates then provide the information obtained from the survey, without the survey recipients' consent, to other marketing companies. They use this information to place robocalls to those who have completed the survey. (Compl. ¶ 23.)  Upon information and belief, United Public provides the information about those recipients who have indicated that they have diabetes to the Diabetes Now Defendants, which then places calls to those recipients offering to provide them with "free" diabetes monitoring services. (Compl. ¶ 24.)   An employee of Verizon's parent company received a call from someone who said she was calling on behalf of Plaza Pharmacy and referred the employee to the diabeteshelpnow.com website. (Compl. ¶ ¶ 31. 33.)

Since October 11, 2012 alone, Defendants and/or those acting on their behalf have made at least 5,785,245 calls to Verizon customers and/or concession accounts, of which approximately 27,678 were made to Verizon concession accounts. (Compl. ¶ 47.)  Defendants have knowingly acted in concert and conspired to place the telemarketing calls in violation of the TCPA or, alternatively, have each aided, abetted, assisted, and/or encouraged the making of such calls. (Compl. ¶ 56.)

Defendants Plaza Resorts, Platinum and Diabetes have filed motions to dismiss.  Plaza Resorts moves to dismiss and raises the following arguments: (1) Verizon lacks standing to bring a TCPA cause of action on behalf of its concession accounts; (2) the Complaint improperly lumps all Defendants together and (3) the Complaint does not explain Plaza's involvement with the telephone calls.  Defendants Platinum and Diabetes move to dismiss and argue the following: (1) Plaintiff lacks standing to bring claims on behalf of its subscribers or employees; (2) the TCPA does not provide for damages to anyone other than the actual recipients or intended recipients of calls; (3) there is no jurisdiction pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA") because the Complaint only alleges violations under the TCPA; (4) telephone calls made to concession lines are exempt and cannot give rise to a damages claim; (5) the Complaint improperly lumps all Defendants together and (6) the Complaint does not explain these Defendants involvement with the telephone calls.

II.  Legal Standard

"Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)." Region 8 Forest Svc. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 n. 8 (11th Cir. 1993); see Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc, 524 F.3d 1229, 1232 (11th Cir. 2008) (same). Where a motion to dismiss is made on the basis of lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, subject matter jurisdiction may be attacked either facially or factually.[3]  See McElmurray v. Consolidated Gov't of Augusta–Richmond

---

[3] Defendants make a facial challenge to subject matter jurisdiction.

County, 501 F.3d 1244, 1251 (11th Cir.2007).

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III.  Discussion

Plaintiffs claim that Defendants have violated the portion of the TCPA that states, in part, "[i]t shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).   The TCPA provides a private cause of action "to a person or entity" based on "a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation" and/or "to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(A) & (B).  According to Defendants, only the "called party" i.e., the "intended recipient," of the telephone call has statutory standing to bring suit under the TCPA. Moreover, according to Defendants, because Verizon was not the "intended recipient" of the telephone calls and the intended recipients were the individuals in possession of the concession account device, Verizon lacks standing.

In interpreting a statute, the Court begins with the language of the statute itself. Warshauer v. Solis, 577 F.3d 1330, 1335 (11th Cir. 2009).  "If the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case,' and 'the statutory scheme is coherent and consistent,' the inquiry is over." Id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). "In determining whether a statute is plain or ambiguous, we consider 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" Id.

The ultimate question presented in this case is who possesses the cause of action that

7

accrues from a violation of the statute.  Section 227(b)(1)(A)(iii) of Title 47 provides that it shall be unlawful to place a telephone call to a cellular telephone using any automatic dialing system or an artificial or prerecorded voice unless the telephone call is made for emergency purposes or made with the prior express consent of "the called party."  The phrase "called party," however, is not defined in the statute.  As the Seventh Circuit Court of Appeals observed in Soppett v. Enhanced Recovery Co., LLC, 679 F.3d 637, 643 (2012), the phrase "called party" appears seven times in the section 227.  Id. at 640.  Four of the times the phrase "unmistakably denotes the current subscriber;" "one denotes whoever answers the call" and the other two "cannot be pinned down by context."  Id.

In attempting to determine who possesses a cause of action for a violation of the statute, there are three possible interpretations, only one of which appears consistent with the language of the statute, Congressional intent and common sense.  The three possible interpretations are: (1) the subscriber always has the cause of action; (2) the person who answers the telephone always has the cause of action or (3) it depends on the facts and circumstances.  The Court believes the third interpretation is the correct one; namely, it depends on the facts and circumstances of each case.  After carefully reviewing the text of the TCPA and its legislative intent, the Court concludes that a cause of action for a violation of the statute inures either to the subscriber of the telephone or the person to whom the subscriber provides the telephone for that person's primary use.

The Court starts with the proposition that the subscriber controls the telephone for all legally relevant purposes, since the subscriber is the person who is obligated to pay for the telephone and has the authority to consent to receive calls that would otherwise be prohibited by

the statute. See Soppet, 679 F.3d at 639-40.  Since the subscriber controls the telephone for all

legally relevant purposes, he or she can transfer use of the telephone, and all rights attendant to

its use, to another.  In most instances when the subscriber is an individual, he or she will be the

primary user of the telephone and the recipient of the prohibited calls. Under such circumstances,

the cause of action inures to the benefit of the subscriber.

However, a subscriber can, and in many cases will, transfer primary use of the telephone to

another.  For example, the head of a household subscribes to three telephones, one to be used by

him or her, one to be used by the subscriber's spouse and one to be used by the subscriber's child.

When the subscriber transfers the right to primary use of the telephone to another, the subscriber

also transfers to the primary user the right to consent to the receipt of otherwise prohibited calls

and the right to any cause of action accruing as a result of the receipt of a prohibited call.[4]  This is a

logical inference from the statutory scheme since the act is designed to protect users of telephones

from nuisance calls and from unwarranted invasions of their privacy.  *See* Pub. L. 1-2-243, § 2, ¶¶

12-14, 105 Stat. 2394 (1991)(banning automated or prerecorded telephone calls is the only

effective means of protecting telephone consumers from "this nuance and invasion of privacy";

automated or prerecorded telephone calls "are a nuisance, are an invasion of privacy"). The

primary user of the telephone is the one who needs protection from nuisance calls and invasions of

privacy, not a subscriber who never uses the telephone.  To conclude otherwise would mean in our

hypothetical that when the subscriber's spouse or child receives a prohibited call on the telephone

that has be given to them for their use, and which the subscriber does not use, the subscriber would

---

[4]  For purposes of this hypothetical, the Court assumes a child that has reached the age of
majority.  The Court need not decide in this case what rights are transferred and what claims
accrue, if any, when a minor child is the primary user of the telephone.

have the cause of action.  Such a result cannot be what Congress had in mind when it enacted the statute.  Thus, the primary user of the telephone, as determined by the subscriber, should have the cause of action when a violation of the statute occurs.[5]

Furthermore, the statute also recognizes that the cause of action can accrue to an entity as opposed to a natural person.  See 47 U.S.C. §227(b)(3)("A person or entity may   .   .   .   bring .   .   .   an action based on a violation of this subsection); Covington & Burling v. International Marketing & Research, Inc., No. CIV.A. 01-0004360, 2003 WL 21384825, at * 8-9 (D.C. Super. Apr. 17, 2003) (permitting law firm to recover under TCPA for illegal telemarketing facsimiles received by firm); All Am. Painting, LLC v. Financial Solutions and Assocs., Inc., 315 S.W.3d 719, 724 (Mo. 2010) (finding TCPA standing for business based on ownership of machines and computers on which offending advertisements were received.).  When an entity as opposed to an individual is involved, the same rationale should apply.  The subscriber controls the legal rights relative to the use of the telephone.  When the subscriber uses the telephone for business purposes, the subscriber retains the cause of action based on a call made to the business in violation of the

---

[5] For this reason, the Court rejects the notion that whoever answers the telephone has the cause of action.  The mere incidental answering of a telephone call, unconnected to being the subscriber or primary user based on a transfer from the subscriber, does not give rise to a claim under the Act.  See Leyse v. Bank of America, N.A., No. 09 Civ. 7654 (JGK), 2010 WL 2382400, at * 4  (S.D.N.Y. 2010) (finding the plaintiff was not the intended recipient of the call and did not have standing to seek damages because the plaintiff was the roommate of the intended recipient of the call); Kopff v. World Research Grp., LLC, 568 F. Supp. 2d 39, 42 (D.D.C. 2008) (administrative assistant in husband's company did not have standing to bring suit under the TCPA when the facsimiles sent were addressed to her husband, the president of the business).  If the purpose of the statute is to protect the user of the telephone from nuisance calls and from an invasion of privacy, it follows that the primary user of the telephone should be the party to whom a cause of action accrues for a violation.  A person who merely answers the telephone for another is not the intended beneficiary of the protections provided by the statute.

statute.  The fact that an agent or employee of the subscriber answers the telephone used for business purposes does not give the answering agent or employee the cause of action, since the statute is intended to protect the business entity which is using the telephone for business related purposes from unwanted intrusions, not the person answering the telephone for the business.

And just as in the case of an individual subscriber who transfers a telephone to another person for primary use, if a business entity subscribes to a telephone, but transfers it to an agent or employee for his or her primary personal use, the cause of action associated with any prohibited call is transferred to its agent or employee.  On the other hand, if the telephone is provided by the business entity primarily for business purposes, and only incidentally for personal use, the cause of action remains with the business subscriber, as it would with a person who incidentally answers the telephone for an individual subscriber.

Here, Verizon alleges it is the subscriber of the concession accounts and that it pays for the accounts.  In addition, Verizon alleges that it provides the cellular telephones to its employees for business use.  Based on these allegation, which at this stage of the proceedings are presumed to be true, Verizon has standing to bring a claim under the TCPA for the calls made to the concession accounts.[6]

In arguing Verizon does not have standing, Defendants rely heavily on Cellco Partnership d/b/a Verizon Wireless v. Wilcrest Health Care Mgmt., Inc., No. 09-3534, 2012 WL 1638056 (D.N.J. May 8, 2012).  In Wilcrest, Verizon brought suit against various defendants for, among

---

[6] Because Verizon is neither the subscriber or primary user of its customers' telephones, Verizon does not have standing to bring a claim on behalf of its customers who allegedly received over 5 million prohibited telephone calls.  Those customers may bring claims on their own behalf.

other claims, violations of the TCPA.  Id. at * 1.  Wilcrest held that "statutory standing to bring a private cause of action must be based on a violation of the TCPA" Id. at * 6.  Wilcrest also noted that "[a] burgeoning body of case law establishes that only the 'called party' i.e., the 'intended recipient,' has statutory standing to bring suit under the TCPA." Id. at * 7.   Because Wilcrest found that Verizon was not the "intended recipient" of the telephone calls, but that the intended recipients were the individuals in possession of the concession account device, the court held Verizon lacked statutory standing. Id.  Furthermore, by relying on legislative history, Wilcrest held that even assuming Verizon had statutory standing as a "person or entity" who had been "called," the "purpose and intent of the TCPA is not consistent with the maintenance of such a cause of action."

This case is not binding on this Court and the Court chooses not to follow it.   Based on the Court's interpretation of the TCPA, if a business is the subscriber of the telephone, and the business provides the telephone to its employees for business purposes, then the business is the party that is harmed by a violation of the statute.  Thus, the business has a cause of action.

The Court next turns to Defendants' contention that the Complaint impermissibly lumps all of Defendants together and does not explain which Defendant committed which wrong.  Related to that, Defendants also argue that the TCPA does not permit third-party liability, and therefore liability is only imposed against the entity that initiates or makes the telephone call.  With respect to liability of parties who did not make the telephone call, the Court agrees with courts that have found that TCPA liability does not only attach to the party that actually placed the call.  See, e.g., Birchmeier v. Caribbean Cruise Line, Inc., No. 12 C 4069, 2012 WL 7062748, at * 1 (N.D. Ill. Dec. 31, 2012) (finding that only permitting TCPA liability to the party that actually made the call

would be "absurd"); In re Jiffy Lube Int'l, Inc. Text Spam Litig., 847 F. Supp. 2d 1253, 1256–58

(S.D. Cal. 2012) (TCPA implicitly includes the doctrine of vicarious liability); Manfred v. Bennett

Law, PLLC, No. 12–CV–61548, 2012 WL 6102071, at * 3 (S.D. Fla. Dec. 7, 2012) (pleading joint

and several liability).[7]  Thus, Plaintiffs may proceed against Defendants under a third-party liability

theory.

      That stated, Defendants are correct that the Complaint impermissibly lumps Defendants

together.  Each Defendant is alleged to be distinct legal entities, but the Complaint does not

adequately explain under what theory of liability Plaintiff is proceeding under.  Although the

Complaint states that the entities are "affiliated" and "act in concert" with each other, these

statements are simply too conclusory.  See Court Appointed Receiver of Lancer Offshore, Inc. v.

Citco Group Ltd., No. 05–60080–CIV, 2011 WL 1233126, at * 2 ("This lumping technique

'creates confusion and make the analysis of the complaint unnecessarily burdensome,' and results

---

[7] Defendants rely on several cases in support of its argument that the TCPA does not permit liability for an entity that did not make the actual telephone call. (DE 35 at 16-17.).  The Court agrees with Defendants that Plaintiffs' reliance on the language "by or on behalf of" in section 227(c)(5) is inapplicable to claims brought pursuant to section 227(b)(1)(A)(iii), given that for claims brought pursuant to section 227(b)(1)(A)(iii), the private right of action is set forth in 227(b)(3).  But the Court does not agree with Defendants that Plaintiffs are precluded from bringing claims under a third-party liability theory.  Indeed, even the cases cited by Defendants in support do not so hold.  For example, while Thomas v. Taco Bell Corp. rejected a finding that a party can be held liable if a call is made on its on behalf because the language relied upon by the plaintiff was found in a different section of the TCPA than under the section brought in that case, Thomas did permit imposing liability under a vicarious liability standard. Thomas v. Taco Bell Corp. 879 F. Supp. 2d 1079, 1084. (C.D. Cal. 2012); Mey v. Pinnacle Sec., LLC, No. 5:11CV47, 2012 WL 4009718, at * 4 (N.D. W. Va. Sept. 12, 2012) (same).  Next, the Court finds Applestein v. Fairfield Resorts, No. 0004, 2009 WL 5604429 (Md. Ct. Spec. App. July 8, 2009) inapposite. There, the court was reviewing the trial court's factual findings after a bench trial in which the court made a factual finding that one entity was not acting as another entity's agent. Id. at * 6. This conclusion was made after hearing evidence at trial.  Furthermore, Applestein stated that whether an entity acts as an agent or an independent contractor under the TCPA is a question of fact. Id.  Given this case is still at the pleading stage, Applestein is unpersuasive.

in . . . making accusations that are 'just not accurate.'") Thus, Plaintiffs are directed to re-plead the Complaint.

For the foregoing reasons, the motions to dismiss are granted in part and denied in part. Plaintiffs are given leave to amend the Complaint.[8]

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)      Defendant Plaza Resorts, Inc.'s Motion to Dismiss Plaintiffs' Verified Complaint

        (DE 35) is **GRANTED IN PART AND DENIED IN PART**.

2)       Defendant Platinum Marketing Group and Diabetes' Motion to Dismiss (DE 38) is

        **GRANTED IN PART AND DENIED IN PART**.

3)       Defendant Plaza Pharmacy, LLC and Plaza Health Care Solutions Unopposed

        Motion for Leave to Join in the Motions to Dismiss other Defendants and Adoption

        of the Arguments Set Forth Therein (DE 42) is **GRANTED**.

4)      Plaintiffs shall amend the Complaint **within 20 days of the date of entry of this**

        **Order.**

        **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 27th day of September, 2013.

                                        _____
                                        KENNETH A. MARRA
                                        United States District Judge

---

        [8] The Court does not understand Plaintiffs jurisdictional statement that the "Court has jurisdiction over Plaintiffs' claims under the Telemarketing and Consumer Fraud and Abuse Prevention Act." (Compl. ¶ 16.)  Given that the counts in the Complaint only refer to the TCPA, Plaintiffs should amend this paragraph.